**RUDOLPH WOLF, Plaintiff**

v.

**LUDVIG CHRISTENSEN, et al., Defendants**

Civil No. 7-1940

District Court of the Virgin Islands

Div. of St. Thomas and St. John at
Charlotte Amalie

November 4, 1941

**MOORE,** *Judge*

This is an action to declare a deed void. This matter came on for hearing on May 5, 1941. The complainant made a motion for judgment upon the pleadings, and after hearing the argument of counsel for both complainant and defendant upon said motion, it was denied.

A pre-trial conference was held between the court and attorneys for both sides and the issues to be tried were defined by the attorneys for both sides as follows:

Complainant contended (1) that the sale of the property which is the subject-matter of this litigation was wrongfully forced upon him under pressure of duress and threats of incarceration exercised by the Honorable Albert Levitt, Judge of the District Court of the Virgin Islands of the United States at St. Thomas, against his free will and by threats to confine him in jail; (2) [a] that the defendants in this case had knowledge of the fact that this complainant was being so forced by the Judge of the District Court, and that the sale of this property was not his free act; (b) that the defendants knew this complainant had been declared to be mentally incompetent at the

4

time of the transfer of this property, and that he could not act freely; (3) that as a result of (1) and (2) the defendants purchased the said property at a price far below its value.

The defendants joined issue upon the three points raised by the plaintiff, denying each of them in its entirety, and raised as a further issue, the additional defense of laches; to wit: that this complainant, if mentally incapable, has recovered his sanity, and that the said recovery has extended back over a period of more than three and a half years, during which time he filed no process, suit, or claim in this respect.

On these issues as defined by the parties, the case came on to trial.

Rudolph Wolf, the complainant in this case, was arrested and brought into the Police Court of St. Thomas on September 9, 1935. At the hearing in that court he was bound over to the District Court on a charge of rape and bail fixed in the sum of $5,000.00. On October 11, 1935, information was filed against him in the District Court charging statutory rape, Case No. 29 - 1935; the alleged victim being the minor daughter of his wife, by a previous husband. He was confined in the regular jail in St. Thomas provided for prisoners in the Virgin Islands. He was unable to make bond and remained in jail from the time of his incarceration on September 9, 1935, until the date of his trial which was held on December 1, 1935. He was represented by his attorney, Mr. Hugh Francis of Puerto Rico, and was tried by a jury, and on December 2, 1935, the jury brought in a verdict of guilty. On December 3, 1935, the Judge of the District Court entered the following sentence:

"NOW, THEREFORE, it is ORDERED and ADJUDGED by the court this 3rd day of December, 1935, that the said defendant be and he is hereby sentenced to imprisonment for a term of ten

years in the Richmond Penitentiary at Christiansted, St. Croix, Virgin Islands of the United States of America; said sentence of ten years to be suspended during the good behavior of the said defendant pursuant to the provision of Section V [5], Chapter II [11], Title IV of the Code of Laws of the Municipality of St. Thomas and St. John [5], and upon the express condition that the said defendant will enter a hospital and remain there under the care of a competent physician for not less than one month and thereafter, until the physician certifies that Rudolph Wolf is physically and mentally fit to depart from the hospital."

At the time of the said trial and conviction in the District Court in Case No. 29 - 1935, there were also pending in this court against the said Rudolph Wolf, the following additional criminal charges:

Case No. 26 — 1935 — Charge: Attempted Rape;
Case No. 27 — 1935 — Charge: Lewd and Lascivious Conduct;
Case No. 28 — 1935 — Charge: Attempted Rape;
Case No. 30 — 1935 — Charge: Lewd and Lascivious Conduct.

The charge in each of the above pending cases was that the defendant committed the alleged crime upon the aforesaid Anna Wolf, a female child under fifteen (15) years of age, the daughter of his then wife by a previous husband, and the same girl as in Case No. 29 — 1935.

In addition to the above criminal charges which were pending against Rudolph Wolf at the time of trial on the charge in Case No. 29 — 1935, there was also pending on the civil side of the District Court the following civil suits against him:

Civil No. 12 — 1935 — Anna Wolf v. Rudolph Wolf — Civil Action for Rape on the part of the abovementioned minor daughter of his wife (his stepdaughter), in the sum of $10,000.00;
Civil No. 13 — 1935 — Anna Wolf (his wife) v. Rudolph Wolf — for breach of contract in the sum of $8,000.00;

Civil No. 10 — 1935 — Richard Zelinski (his son) v. Rudolph Wolf — Action for Debt asking damages in the sum of $11,052.00.

These civil suits had been filed as attachment suits under the civil law of attachment, and the estate and property and bank account of this complainant, Rudolph Wolf, in St. Thomas, had been attached in these proceedings in accordance with the local laws of attachment. This complainant's property in St. Thomas consisted of a single piece of property, or estate, of approximately 450 acres with certain buildings, cattle and livestock; some of the land being classified as pasture land and some as bush land. His bank account was approximately four hundred ($400.00) dollars.

After the jury brought in its verdict of guilty in the rape case, negotiations were started toward the sale of the aforesaid estate in St. Thomas for the purpose of settling the above civil litigation, which was pending before the District Court; as well as for the purpose of obtaining clemency for this complainant in any sentence to be imposed in the rape case of which he had then been convicted. Judge Levitt participated in the negotiations for the sale of this complainant's estate and for the distribution of the proceeds from the same, which negotiations were worked out between Judge Levitt, Mr. Hugh Francis, attorney for this complainant, and Mr. Jacques M. Schiffer, attorney for each of the complainants in the above-mentioned civil suits, and Mr. George S. Robinson, the Government Attorney. This complainant's interest in a sale and settlement was to obtain probation in the rape case for which he had then been convicted, and some favorable action or dismissal in the other criminal cases still pending; and to get his property released from the attachments in the foregoing civil suits on the part of the members of his family. The interest of the complainants

7

in those civil suits was to obtain settlements of their claims against this complainant. The apparent interest of the Judge of the District Court was only that these matters should be settled, all of which arose out of the same crime for which this complainant had then been convicted, and that the settlements be made before sentence should be passed on this complainant in the criminal rape case in which he stood convicted, in order that such settlements might be considered by him in the nature of restitution to the injured parties by reason of this complainant's crime of rape. The evidence shows that the first conference was held between Judge Levitt, Mr. Hugh Francis, attorney for this complainant, and Mr. Jacques M. Schiffer, attorney for this complainant's wife, son, and step-daughter in the civil cases.

After this conference Mr. Schiffer went out to look for a purchaser of the Wolf property. After making some inquiries he approached these defendants for an offer for this estate. After some consideration, these defendants then made an offer of $20,000.00 for the estate. Mr. Schiffer returned with that offer from the present defendants, Viggo Christensen, Ludvig Christensen, and Valdemar A. Miller, in the sum of $20,000.00. It is further apparent that the conferees worked out the detail of the sale based upon the above offer and also worked out the distribution of the purchase price of $20,000.00 to settle the pending cases, with a balance of $2,500.00 to go to this complainant after payment of his attorney's fees to Mr. Hugh Francis in the sum of $1,250.00 and a mortgage due to the Virgin Islands National Bank in the sum of $2,300.00, which said agreement was worked out by the following parties: Mr. Francis, representing Rudolph Wolf, the Judge of the District Court, Mr. Schiffer, and the Government Attorney, Mr. George S. Robinson; and the distribution of the purchase price in settlement of all claims was arranged as follows:

8

| | |
|---|---|
| To Anna Wolf (step-daughter) | $8,000.00 |
| To Anna Wolf (his wife) | 3,000.00 |
| To Richard Zelinski (his son) | 2,000.00 |
| To Jacques M. Schiffer (attorney's fees in payment of the three civil cases mentioned above) | 750.00 |
| To Hugh Francis (his attorney's fee) | 1,250.00 |
| To Government of the Virgin Islands (in payment of mortgage on his property) | 2,300.00 |
| Court costs | 200.00 |
| | ——— $17,500.00 |

The balance of $2,500.00 to go to Rudolph Wolf.

The records of the Court show the following orders in the cases pending against Rudolph Wolf, both criminal and civil, as follows:

Criminal No. 29 - 1935 — Sentence as noted above;

Criminal No. 26 - 1935 — Four months in jail — from date of incarceration;

Criminal No. 27 - 1935 — Five years in the Richmond Penitentiary — suspended;

Criminal No. 28 - 1935 — No disposition;

Criminal No. 30 - 1935 — No disposition;

Civil No. 13 - 1935 — Order of Discontinuance.

Civil No. 12 - 1935 — Order of Discontinuance.

Civil No. 10 - 1935 — Order of Discontinuance.

The evidence further shows that after the entry of the above-mentioned order by the Court in Case No. 29 - 1935, suspending the sentence upon Rudolph Wolf, that in accordance with the provisions of the said order he was sent to the Julia Clinic in Puerto Rico, which clinic was suggested by Mr. Francis, attorney for Rudolph Wolf, and he was accompanied to the said clinic by Mr. Francis, his attorney, and a police escort from this court.

Rudolph Wolf entered the Julia Clinic on December 9, 1935, and remained there until January 1, 1936. No mental incompetency of any kind was found. He was found to be mentally competent and physically fit, except for the need of a minor operation for fistula. He was discharged from the Julia Clinic on January 1, 1936. He was transferred to the Presbyterian Hospital of Puerto Rico on January 1, 1936, where he had an operation for the fistula and where he remained until January 27, 1936, at which time he was discharged from that institution as being mentally and physically fit. Dr. Jose D. Gimenez, the head of the Julia Clinic, who qualified as an expert psychiatrist, testified that at no time during his examination or observation of Rudolph Wolf did he find any mental incompetency or disability of any kind whatsoever and on February 9, 1936, certified the following conclusion to Judge Levitt: The patient Rudolph Wolf who has been under our observation from December 9, 1935 to February 9, 1936, is in good physical condition and is mentally competent to assume all duties and rights of a citizen."

After Rudolph Wolf's discharge from the aforesaid Presbyterian Hospital, Mr. Francis, his attorney, gave him a check in the sum of eighteen hundred ($1,800.00) dollars. This apparently represented the balance of the $2,500.00 which his attorney apparently received for him, less hospital and operation expenses. Thereafter, this complainant departed upon a trip to South America.

## CONCLUSIONS

It is clearly probable that the present complainant agreed to both the sale of his property and the settlement distribution of the proceeds as aforementioned, in order to obtain from the Court the suspended sentence which he did obtain. It is also probable that he was faced

10

with the choice of agreeing to the sale and then agreeing to the settlements, as arranged, and receiving the suspended sentence; or not agreeing and not receiving a suspension of sentence. The agreement for sale of the property, the agreement for distribution of the proceeds, and this complainant's sentence in the rape case were all worked out on the same day, to wit: December 3, 1935, after the verdict of the jury finding him guilty. However, even if the contention of complainant's counsel is correct that the Judge of the Court had in mind sentencing this complainant to a long term in the penitentiary, but agreed to give him probation provided he sell his property and make distribution of the proceeds as worked out above, it was still this complainant's free choice whether he would make the agreement and receive a suspended sentence or reject the agreement and take whatever other sentence the Judge saw fit in his discretion to impose. Furthermore, as all of his property had already been attached in the civil suits, it is clear that, had he not made this sale and settlement he could not have taken possession of his property again, without first successfully defending against the attachment suits which were based upon the very act for which he had been convicted criminally. And after his criminal conviction of the act of rape, his chances to defend in the civil actions against him, based upon damages by reason of that act of rape, must have appeared small. It would seem that this prospect as well as an effort to have the Judge give him probation must also have been a considered reason for this choice to sell the property and make a settlement of the civil suits. These attachments were known to both Wolf and his attorney at the time. This is borne out by the testimony of complainant's own witness, Mr. Francis, who was his lawyer at the time of his criminal trial and represented Wolf throughout

11

the negotiation for sale of the property. Mr. Francis stated "Judge Levitt never told Wolf that he had to sign that document" (see page 150 of the transcript); "Mr. Wolf having knowledge of what his attorney was doing and the whole thing was presented to Mr. Wolf by me and I persuaded Mr. Wolf to sign that document" (see page 152 of the transcript).

It is not within the province of this court to decide upon the propriety of the acts of Judge Levitt insofar as they did not constitute duress. The only question before us is whether duress was used to compel this complainant to sell his property against his free choice, at the time, and under the circumstances.

According to the testimony of Mr. Cyril Michael, Clerk of the Court, who was then Secretary to Mr. Robinson, the Government Attorney, the whole matter of the offer of $20,000.00, the sale and the settlement of the civil litigation on the part of his stepdaughter, wife and son, was worked out between Mr. Francis, attorney for this complainant, Mr. Schiffer, Mr. Robinson, and Judge Levitt. Further, that Mr. Francis dictated most of the agreement with Judge Levitt and the others inserting occasional portions. The evidence further shows that Mr. Francis, his attorney, represented him throughout the whole transaction, and even arranged the details concerning his personal property, namely, what he was to take with him, what was to be left for him here in St. Thomas, how it was to be sold for him, that Mr. Percy Souffront should act as his attorney-in-fact; and that he also made arrangements for the payment to him of his share of the $20,000.00, to wit: the $2,500.00. He also suggested the clinic for Wolf to be sent to, in accordance with the Court's instruction for at least one month's examination, and after Wolf was released from the said clinic and after he had undergone the fistula operation at the Pres-

byterian Hospital, he then turned over to him the balance of his personal amount of $2,500.00, to wit: $1,800.00.

It has been contended by complainant's counsel that this complainant had been declared insane at the time that this transaction was made and that, therefore, he was incompetent to sign this agreement. The sentence itself shows that Judge Levitt did suspect some mental derangement and ordered him held for a thirty-day examination in the mental clinic as a condition of his parole. However, the report from the clinic in which Wolf was confined disposed of the personal doubts of Judge Levitt and shows that he was mentally competent and physically fit. There was no legal adjudication of insanity and even the Judge's suspicion of insanity was disposed of by the report of the alienist in the institution to which he was sent. Therefore, the evidence shows that the complainant was competent at the time that the agreement was signed. The condition of his probation contained in the above sentence was not intended, and did not amount to an adjudication of insanity.

It has been further contended by this complainant's counsel that he was forced to sell this property at a sacrifice price far below its market value, and that these defendants knew that he was being forced to sell this property far below its market value and thus took advantage of the situation. This complainant testified that he valued this property at $40,000.00. This testimony, however, is contradicted by the appraisement placed upon the said property in other testimony, as well as other competent evidence in the case. His own testimony shows that one month prior to his arrest upon any charge whatsoever, he had offered this property for sale by letter to one Hastings in Puerto Rico for the sum of $25,000.00. There is no evidence that Hastings was willing to purchase this property at the figure of $25,000.00. There is

much other competent evidence to the effect that this property was not worth over $20,000.00 as a fair cash value. There is no competent evidence by which this court can find that the $20,000.00 cash purchase price was below the fair cash value of the property at that time.

There is no evidence in this case to the effect that these defendants had any connection with the persons arranging for the sale of this property, except that after Mr. Schiffer had approached these defendants and requested and obtained an offer for the property, then Mr. Valdemar A. Miller, one of the defendants and who was acting for all three of the defendants, came into Judge Levitt's chambers on one occasion in the presence of the other conferees and confirmed the fact that they were willing to pay $20,000.00 cash for the property, and asked if this complainant was willing to sign the agreement for that amount if they went to work and raised that amount of money which they had to borrow.

Consequently, if complainant's contention could be upheld that duress was used in forcing this complainant to sell his property under these circumstances and obtain the cash from which these settlements were made, there is no evidence to connect these defendants with any such force upon this complainant and no evidence to show that they had anything whatsoever to do with the agreement for distribution of the funds which they paid into the Court. There is no evidence that they participated in or had any knowledge of how the agreement was reached between the foregoing conferees and Rudolph Wolf. There is every reason to indicate that the defendants felt that with the purchase being approved by the Judge of the District Court, the attorney for this complainant, the Government Attorney, and all of the persons involved, and then being signed by Wolf himself, that they were certainly in the highest sense bona fide purchasers for value.

14

■ The exercise of the power to cancel a written instrument entered into by the parties thereto is the exercise of an extraordinary power by a court of equity, and to justify it, the grounds of cancellation must be established by clear, definite, convincing and well founded evidence. It is certainly not sufficient that the party asking a cancellation has created a doubt or suspicion as to the validity of the instrument. The burden of clear and convincing proof rests upon the claimant. Certainly, in this case, there is not a clear and convincing proof that this complainant was coerced into signing an agreement and deed against his free will and choice, at the time, and under the circumstances in which he found himself on December 3, 1935. These defendants had nothing to do with those circumstances under which this complainant found himself on December 3, 1935; they are not chargeable with any of the factors of those circumstances which made him choose to accept the agreement and to agree to the sale; they had nothing to do with the distribution of the $20,000.00 which they paid into the Court, nor the settlement of the attachment suits under which this property was already tied up; and they did not purchase the property at a price far below its then fair cash market value.

■ It is therefore the opinion of the Court on the issues tried that:

(1) the sale of the property was not wrongfully forced upon this complainant under pressure of duress and threats of incarceration exercised by the Honorable Judge Albert Levitt, Judge of the District Court of the Virgin Islands;

(2) the defendants herein are not chargeable with any notice that this property was sold by Rudolph Wolf against his free will and choice; and that the defendants did not connive with anyone to force the said complain-

15

ant, Rudolph Wolf, to sell this property to them against his free will at a sum far less than its value;

(3) these defendants did not have knowledge that this complainant Rudolph Wolf had been declared mentally incompetent at the time of the sale of this property to them; that the said Rudolph Wolf had not been so declared mentally incompetent; but that he was of sound mind and fully competent to transact his affairs;

(4) the defendants did not as a result of the above purchase the said property as a price unreasonably far below its value;

(5) the defendants are bona fide purchasers for value;

(6) the findings of this court should be in favor of the defendants herein;

(7) the findings of fact and decree may be prepared in accordance with the foregoing opinion.